**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| FAST CAPITAL MARKETING, LLC. § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-08-2142 |
| § | |
| FAST CAPITAL LLC, *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND OPINION**

In this contract dispute, Fast Capital Marketing, LLC d.b.a. Merchant Credit Funding ("Merchant Credit") sued Fast Capital, LLC ("Fast Capital"); Goldman Sachs Specialty Lending Group, L.P.; Rapid Advance Funding 2007-1, LLC d.b.a. Rapid Advance; Strategic Funding Source, Inc.; and Strategic Funding, LLC. Merchant Credit asserted claims for breach of contract, misappropriation of trade secrets, unfair competition, unjust enrichment, and tortious interference, seeking damages, injunctive relief, and certification of a class of contractors that had similar business arrangements with Fast Capital. On December 24, 2008, this court granted the defendants' motions to dismiss under Rule 12(b)(6) with leave to amend to assert a breach of contract claim for nonpayment of fees and a claim for tortious interference with prospective contractual relationships. (Docket Entry No. 49).

Merchant Credit has moved for reconsideration of this court's decision granting the motions to dismiss, (Docket Entry No. 50), and the defendants have responded, (Docket Entry No. 52).

Based on a careful review of the motion and response; the arguments of counsel; and the applicable law, this court denies Merchant Credit's motion for reconsideration. The reasons are

explained below.

I.      **Background**

The relevant background is detailed in this court's previous memorandum and opinion and only summarized here. Briefly, Fast Capital is in the business of purchasing future credit-card receipts at a discount from merchants in exchange for cash. These merchants enter into contracts with Fast Capital under which Fast Capital advances them cash in exchange for a certain amount of credit-card receivables.

To fund its business, Fast Capital obtained a loan from Goldman Sachs. Fast Capital hired Merchant Credit to solicit merchants to enter into the cash-advance contracts with Fast Capital. On April 16, 2007, Fast Capital and Merchant Credit entered into two identical Independent Sales Organization (ISO) Agreements.[1] The ISO Agreements describe Fast Capital's "Program" as the contracts between merchants and Fast Capital. Merchant Credit "is in the business of marketing to merchants the products and services of one or more third party payment processors, equipment lessors, and similar parties as a sales and referral agent," and "wishes to promote the Program to merchants and refer merchants to Fast Capital to participate in the Program." (*Id.*). As compensation for soliciting merchants for Fast Capital, Merchant Credit was paid based on a formula set out in the ISO Agreements.

The ISO Agreements state that "Fast Capital has the sole and exclusive right to determine whether or not to accept a merchant into the program referred by Contractor, or to terminate a Merchant Agreement after its effective date. Fast Capital has no obligation to pay Compensation to Contractor for merchants referred by Contractor that are not accepted into the Program by Fast

---

[1] The ISO Agreements are governed by New York law. (Docket Entry No. 5, Ex. A at 7).

Capital." (*Id.*, Ex. A at ¶ 4). Merchant Credit agreed that during the ISO Agreement term and for two years afterward, it would not "interfere in any manner whatsoever, directly or indirectly, with Fast Capital's relationship with any Merchant . . . cause or attempt to cause any Merchant to terminate its Merchant Agreement," or "solicit the business of any Merchant for any competitor of Fast Capital or for their own account." (*Id.*, Ex. A at ¶ 8(a)-(c)). The ISO Agreements contain a provision stating that Fast Capital may assign its rights and obligations under the ISO Agreements without Merchant Credit's consent but that Merchant Credit may not assign any of its rights, interest, or obligations under the ISO Agreements without Fast Capital's written consent. (*Id.*, Ex. A at ¶ 12(b)).

In the amended complaint, Merchant Credit alleged that the merchants it solicited in connection with the Fast Capital ISO Agreements were "the customers of Merchant Credit." (Docket Entry No. 5, at ¶ 11). Merchant Credit asserted that it "invested significant time and money to develop a customer base concentrated primarily in Texas and Canada." (*Id.* at ¶ 10). Merchant Credit alleged that Goldman Sachs "took over" the business of Fast Capital and gave information about Merchant Credit's customers to Rapid Advance, Strategic Funding Source, and Strategic Funding. These entities, like Fast Capital, are in the business of paying merchants cash for future credit-card receivables. Merchant Credit contended that the list of information about the merchants was "developed and compiled by Merchant Credit for its own business opportunities," (*Id.* at ¶¶ 9, 12), and is confidential under the ISO Agreements.

In the amended complaint, a primary basis for Merchant Credit's claims for breach of contract, misappropriation of trade secrets, unfair competition, unjust enrichment, and tortious interference is the disclosure of the "merchant information" by Goldman Sachs and Fast Capital to

3

the other defendants.  Merchant Credit asserts that the information it obtained from the merchants and disclosed to Fast Capital is "confidential information" under the ISO Agreements.

The confidentiality provision in the ISO Agreements states in relevant part:

> Any "Confidential Information" disclosed pursuant to this Agreement shall remain the sole and exclusive property of the disclosing party, and the recipient shall have no rights or interest with respect thereto. For purposes of this Agreement, "Confidential Information" means all proprietary, secret or confidential information or data relating to the business of the disclosing party, the parties to and the terms and provisions of this Agreement. "Confidential Information" shall not include: (a) information that is generally known to the public; (b) information known to the recipient prior to its disclosure by the disclosing party; or (c) information obtained by the recipient from a third party not bound by any disclosure agreement.

(Docket Entry No. 5, Ex. A at ¶ 9).

Goldman Sachs asserts that Fast Capital failed to repay its loan, which was collateralized by Fast Capital's assets, including its accounts receivable.  Goldman Sachs asserts that Fast Capital assigned the merchant contracts to Rapid Advance, Strategic Funding Source, and Strategic Funding under the assignment provision of the ISO Agreements.  Goldman Sachs asserts that it had a perfected security interest in Fast Capital's accounts receivable and was entitled to realize the value of its collateral by providing information about the merchants Fast Capital had contracted with to Rapid Advance, Strategic Funding Source, and Strategic Funding when they were assigned Fast Capital's merchant contracts.

In granting the defendants' motion to dismiss, this court concluded that the merchant information was expressly excluded from the contractual definition of confidential information. Under the ISO Agreements, "confidential information" does not include "information obtained by the recipient from a third party not bound by any non-disclosure agreement." (Docket Entry No. 5,

4

Ex. A. at ¶ 9). Merchant Credit obtained the merchant information that it disclosed to Fast Capital from the merchants, who were not bound by a nondisclosure agreement. This court concluded that "[w]hen the disclosing party – here, Merchant Credit – obtains information from a third party not subject to the nondisclosure agreement – here, the merchants – the disclosed information is not 'confidential information' under the ISO Agreements." (Docket Entry No. 49, Memorandum and Opinion at 15). This court granted the defendants' motion to dismiss Merchant Credit's claims for breach of the confidentiality provision of the contract, good faith and fair dealing, trade secret misappropriation, unfair competition, and tortious interference because the merchant information is not confidential under the unambiguous terms of the ISO Agreements. Merchant Credit's motion for reconsideration followed.

## II.    The Legal Standard

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *See Sierra Club v. Tri-State Generation and Transmission Ass'n.,* 173 F.R.D. 275, 287 (D. Col. 1997); *see also St. Paul Mercury Ins. Co. v. Fair Grounds Corp.,* 123 F.3d 336, 339 (5th Cir. 1997). A motion seeking reconsideration of a judgment or order is generally considered a motion to alter or amend a judgment under Rule 59(e) if it seeks to change the order or judgment issued. *Standard Quimica De Venezuela v. Cent. Hispano Int'l, Inc.,* 189 F.R.D. 202, 204 (D.P.R. 1999). A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. Hydrochem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (citing *In re TransTexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). "A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment

issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Relief is also appropriate when there has been an intervening change in the controlling law. *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). The Fifth Circuit warns that altering, amending, or reconsidering a judgment under Rule 59(e) is an extraordinary remedy that courts should use sparingly. *Templet*, 367 F.3d at 479; *see also* 11 CHARLES A. WRIGHT, ARTHUR R. MILLER,& MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2810.1, at 124 (2d ed. 1995). Because granting a Rule 59(e) motion is such an extraordinary remedy, the Rule 59(e) standard "favors denial of motions to alter or amend a judgment." *S. Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

**III.    Analysis**

Merchant Credit seeks reconsideration of this court's ruling that the merchant information is not confidential. Merchant Credit asserts that this court's conclusion that the merchant information is not confidential is "the key, the predicate, for almost all of the Court's other holdings." (Docket Entry No. 50, at 2). Merchant Credit challenges this court's conclusion that Merchant Credit was both a recipient and the disclosing party of merchant information under the exclusionary clause of the confidentiality provision. According to Merchant Credit, that conclusion "makes little, if any, sense." (Docket Entry No. 50, at 3). Merchant Credit argues that "with respect to any particular disclosure" it can only be the recipient or the disclosing party, but not both. Merchant Credit offers an example by substituting its name for both the recipient and the disclosing party in two sentences of the confidentiality provision. "Any Confidential Information disclosed pursuant to this Agreement shall remain the sole and exclusive property of the disclosing party

[Merchant Credit], and the recipient [Merchant Credit] shall have no rights or interest with respect thereto. . . . Confidential Information shall not include . . . (b) information known to the recipient [Merchant Credit] prior to its disclosure by the disclosing party [Merchant Credit]." (*Id.*, at 4). Merchant Credit argues that because these sentences do not make sense if Merchant Credit is both the recipient and disclosing party, this court's interpretation "creates a conflict where one need not exist." (*Id.*, at 5).

According to Merchant Credit, "[i]t should be taken for granted that the recipient and the disclosing party must be parties under the Agreement." (Docket Entry No. 50, at 4). Merchant Credit argues that for purposes of determining the confidentiality of the merchant information, Fast Capital was the recipient and Merchant Credit was the disclosing party. Merchant Credit contends that the merchant information could only be excluded from the contractual definition of confidentiality if the recipient – Fast Capital – received the information directly from the merchants themselves, which did not happen in this case.

Merchant Credit's interpretation of the exclusionary clause is unpersuasive. The amended complaint clearly states that Merchant Credit received the merchant information from the merchants and then disclosed that information to Fast Capital. The confidentiality provision does not state that Fast Capital is always the recipient and Merchant Credit is always the disclosing party of confidential information. Contrary to Merchant Credit's assertion, the ISO Agreements contemplate that the disclosing party will not always be one of the two parties to the contract. The "third party not bound by any nondisclosure agreement" described in the exclusionary clause will necessarily be the disclosing party when it discloses information to a recipient. The ISO Agreements do not define or limit "recipient" to apply to a party only when the transfer of information is between

7

Merchant Credit and Fast Capital. Thus, when Merchant Credit obtained information from the merchants, Merchant Credit was the recipient and each individual merchant was the disclosing party. When Fast Capital obtained the merchant information from Merchant Credit, Fast Capital was the recipient and Merchant Credit was the disclosing party. Merchant Credit's examples of being both the recipient and the disclosing party are unpersuasive. Those examples involve one transfer of information. The claims arise from two separate transfers of information. Merchant Credit was the recipient in one transfer – from the merchants – and the disclosing party in the other transfer – to Fast Capital.

Moreover, Merchant Credit's interpretation of the confidentiality provision is in conflict with the assignment provision of the ISO Agreements. "It is axiomatic under New York law that courts interpret a contract so as to give effect to all of its provisions and cannot and should not accept an interpretation that ignores the interplay of the terms, renders certain terms inoperable, and creates a conflict where one need not exist." *Net2globe International*, *Inc. v. Time Warner Telecom of New York*, 273 F.Supp.2d 436, 445 (S.D.N.Y. 2003) (internal quotations and citations omitted). If the merchant information were confidential, as Merchant Credit urges, then Fast Capital would be prohibited from assigning to third parties its right to future credit-card receivables under Fast Capital's merchant contracts. Fast Capital would also be prohibited from assigning its obligations under the ISO Agreements to third parties. But nothing in the ISO Agreements limits Fast Capital's right to assign its interest in a separate merchant contract to a third party. And Fast Capital is entitled to assign the ISO Agreements without Merchant Credit's consent. (Docket Entry No. 5, Ex. A at ¶ 12(b)). Both types of assignments – that of the merchant contracts and that of the ISO Agreements – would necessarily include Fast Capital providing the merchant information to the

assignees, such as Rapid Advance, Strategic Funding Source, and Strategic Funding.

Merchant Credit argues that it did not reasonably expect, under the terms of the ISO Agreements, that the merchant information would not be confidential "simply because the information was revealed to Merchant Credit in the first instance by the merchants." (Docket Entry No. 50, at 6). Merchant Credit contends that this court's interpretation would allow Fast Capital to take the merchant information and sell it to another company that is in the business of purchasing credit-card receivables – with no obligation to pay Merchant Credit – instead of using the information for itself and entering into contracts with the merchants – and paying Merchant Credit.

The ISO Agreements state that "Fast Capital has the sole and exclusive right to determine whether or not to accept a merchant into the program referred by Contractor, or to terminate a Merchant Agreement after its effective date. Fast Capital has no obligation to pay Compensation to Contractor for merchants referred by Contractor that are not accepted into the Program by Fast Capital." (*Id.*, Ex. A at ¶ 4). If Fast Capital did not enter into merchant contracts with the merchants referred by Merchant Credit and instead sold the merchant information to its competitors, Merchant Credit could assert a claim for breach of the implied covenant of good faith and fair dealing under New York law. *See Bear Sterns Funding*, *Inc. v. Interface Group-Nevada*, *Inc.*,, 361 F.Supp.2d 283, 297 (S.D.N.Y. 2005) ("[A] party may breach the implied covenant of good faith and fair dealing even if that party's conduct does not contravene the express provisions contained within the four corners of the written agreement."). But in the present case, Fast Capital did enter into contracts with the merchants. The ISO Agreements do not prohibit Fast Capital from assigning its agreements with the merchants to third parties. And Merchant Credit agreed that Fast Capital could assign the ISO Agreements without Merchant Credit's consent. Fast Capital disclosed the merchant

information to third parties when it assigned its rights under the merchant contracts and its duties under the ISO Agreements to Rapid Advance, Strategic Funding Source, and Strategic Funding, assignments it was free to make.

Merchant Credit alternatively argues that the confidentiality provision of the ISO Agreements is ambiguous. According to Merchant Credit, this provision is subject to two reasonable interpretations. One is that Merchant Credit can only be the disclosing party with respect to the merchant information. The other, set forth in this court's memorandum and opinion, is that Merchant Credit received merchant information from the merchants and then disclosed merchant information to Fast Capital. Merchant Credit argues that because "the contract language is subject to more than one reasonable interpretation or construction and extrinsic evidence of the parties' intent exists, the [contract is ambiguous and the] proper interpretation is a factual question." *See Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir. 1993). Merchant Credit contends that this court should consider evidence about the expectation of parties in this industry and the intent of Merchant Credit and Fast Capital, or construe the ambiguity against the contract's drafter, Fast Capital.

These arguments are similarly unpersuasive. Merchant Credit's interpretation of the confidentiality provision is not a "reasonable interpretation" because it would "render [the assignment provision] inoperable. *See Net2globe International*, 273 F.Supp.2d at 445 (courts "cannot and should not accept an interpretation that ignores the interplay of the terms, renders certain terms inoperable, and creates a conflict where one need not exist"). Because there is only one reasonable interpretation of the ISO Agreements that gives effect and meaning to all of its terms, the confidentiality provision is not ambiguous.

**IV.     Conclusion**

Merchant Credit has failed to present new evidence or an error of law that would warrant the "extraordinary relief associated with the granting of a motion for reconsideration" under Rule 59. *Templet*, 367 F.3d at 479-80. Merchant Credit's motion for reconsideration is denied.

SIGNED on January 26, 2009, at Houston, Texas.

                                                     _____
                                                                Lee H. Rosenthal
                                                         United States District Judge